NESBIT et al. v. BRAKER.

(Supreme Court, Appellate Division, First Department.  May 12, 1905.)

1. MECHANICS' LIENS—SUITS TO ENFORCE—ABSENCE OF ARCHITECT'S CERTIFI-
CATE—UNREASONABLE DETENTION.
    Where a building contract provides for payments only upon the writ-
ten certificate of the architect, the contractors, in order to enforce a me-
chanic's lien in the absence of the certificate, must affirmatively show
not only a demand and refusal of the architect to deliver the certificate,
but also that it is unreasonably withheld by him.

2. SAME—SUBSTANTIAL PERFORMANCE—DEFECTS—COMPENSATION — BURDEN OF
PROOF.
    Where a building contract was not specifically performed in certain
particulars, the burden was on the contractors, in a suit to enforce a
mechanic's lien, to show substantial performance, and also to show what
would be a fair and reasonable compensation to be deducted for the de-
fects.

3. SAME—SUBSTANTIAL PERFORMANCE—COSTLY DEFECTS.
    The failure of a contractor to · furnish proper and suitable doors, as
required by his contract, constitutes such a' defect as to show that his
contract was not substantially performed, where it would cost from $3,-
500 to over $7,000 to replace the doors.

4. SAME—EVIDENCE—SUFFICIENCY.
    In a suit to enforce a mechanic's lien, evidence *held* insufficient to au-
thorize a recovery, on the theory of complete performance, for doors and
panels which cracked and split after being placed in the building.
    O'Brien and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action to foreclose a mechanic's lien by David M. Nesbit and
others against Henry J. Braker.  From a judgment for plaintiffs,
defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and·HATCH, O'BRIEN,
INGRAHAM, and LAUGHLIN, JJ.

James M. Gifford, for appellant.
Frank N. Avery, for respondents.

HATCH, J.  By the terms of the contract, payment for the work
was only to be made upon the written certificate of the architect.
Therefore, the plaintiffs, to maintain the action in the absence of
the certificate, were required to show not only a demand and re-
fusal of the architect to deliver the same, but also that it was unrea-
sonably withheld.  This being a part of the plaintiffs' affirmative
case, the burden devolved upon them to establish such facts by
a preponderance of proof.  Bowery Nat. Bank v. The Mayor, 63 N.
Y. 336.

The complaint avers complete performance of the contract, save
as to the time of completion, which it is averred was delayed by the
defendant, and that such condition was also waived.  The proof
did not sustain the averment of complete performance in the fur-
nishing of materials. · On the contrary, it satisfactorily appeared
that the contract was not specifically performed as to the furnish-
ing of the trim, and also of the doors and panels.  As to the trim,

it has been eliminated from consideration, and the only matter now before the court relates to the sum which has been allowed for the doors and panels. In this regard, the court below was only able to find from the evidence a substantial performance of the contract, and that the defects were inadvertent and not willful. The judgment which has been rendered in favor of the plaintiffs therefore must stand upon this finding; and the right to recover, under the finding of substantial performance. Upon this subject the burden of proof rested upon the plaintiffs to show substantial performance, and they were also required to show what would be fair and reasonable compensation for the defects. In Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238, it was said:

"Substantial performance is performance except as to unsubstantial omissions." And again: "Unsubstantial defects may be cured, and at the expense of the contractor, not of the owner. The contractor cannot recover the entire contract price when defects or omissions appear, for he must show not only that they were unsubstantial and unintentional, but also the amount needed to make them good, so that it can be deducted from the contract price, and a recovery had for the balance only. This is an essential part of substantial performance, and hence the proof should be furnished by the one who claims substantial performance." And further the court said: "When the plaintiff shows that he performed his contract, he is entitled to judgment for the contract price; but when he shows that he performed his contract, except that through inadvertence he omitted to do some unsubstantial things, he is not entitled to recover anything until he shows that the things omitted, if worthy of any attention whatever, can be supplied for a comparatively small sum, in which event he can recover the contract price after deducting that sum. This rule is liberal to the contractor, for it allows him to recover when he has not fully performed, and it cannot be extended without danger to the integrity of the contract. As he does not show full performance, it is not requiring too much of him to show what it will cost to remedy the defects, in order to permit him to recover the contract price, less the sum allowed for defective performance. It is for him to show this, for otherwise the owner could say, 'Am I to pay according to my promise, when the contractor does not perform according to his?' The one who fails in full performance, and who invokes the doctrine of substantial performance, must furnish the evidence to measure the compensation for the defects, and that is the substitute for his failure to do as he agreed."

Comment could not make plainer the rules of law governing this case, in considering the findings of the court and the basis of its decision as appears in such findings and its expressed reasons therefor. The court having refused to find specific performance of the contract, the burden rested upon the plaintiffs to make out their cause of action. The language of the finding in respect to the fulfillment of the contract for the furnishing of the doors and panels is "that the defendant failed to show that there was any latent defect in the doors when delivered." In the finding respecting the trim, the language of the court is "and that defendant failed to prove the remaining counterclaims set forth in the answer." Reference to the answer shows that the pleader averred the facts constituting a defense by way of showing that the contract had not been fulfilled. The counterclaim in that connection consists of a claim to recover for the cost of replacing the defective material thus furnished, and the answer, in terms, pleads it both as a defense and a counterclaim. It seems to be evident, therefore, that

the court disposed of the case upon the theory that the burden of proof was upon the defendant to establish that the plaintiffs had not fulfilled their contract; thus reversing the rule and adopting an erroneous one. A reference to the opinion of the learned court also shows the same erroneous view. It says:

"I do not think that the defendant has successfully shown that the blame of loss should fall upon the plaintiffs." And again: "On the whole, I do not think that defendant has shown that the doors were improperly constructed or were imperfect when delivered."

It is therefore apparent that the court devolved the burden of showing the nonperformance of the contract upon the defendant, whereas the law devolved it upon the plaintiffs. And this reason is quite sufficient to call for a reversal of the judgment.

In addition to this, it was clearly made to appear that the failure to furnish proper and suitable doors would entail a cost in replacing the same of a considerable amount; the proof on the part of the plaintiffs tending to show that such cost would be in the neighborhood of $3,500, and upon the part of the defendant that it would cost something over $7,000. Defects in work cannot be called inadvertent, which require such a sum to make it good. Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017; Mitchell v. Williams, 80 App. Div. 527, 80 N. Y. Supp. 864. This disparity is sufficient to show that the contract was not substantially performed.

If, however, as is claimed, the findings can be construed as findings of complete performance, I am of opinion that they are overthrown by the clear weight of evidence. That all of the doors and panels split, and will be required to be removed in order to make the rooms respectable in appearance, is undisputed. None of them were free from these defects, and the manner in which they cracked and split was uniform upon all the floors, and in all the rooms where they were used. The defects being open and apparent, the issue presented to the court was, what created the force which operated to produce the result, and who was responsible therefor? Evidence was given upon the part of the defendant tending to show that the defect was in the failure to put into the doors and panels material fully kiln-dried, and that the failure in this regard caused the interior wood to contract, and thus to crack the panels and produce the other results. Evidence was also given tending to show that the doors were improperly glued, and the material improperly placed. Upon the part of the plaintiffs, evidence was given tending to show that the doors, when delivered, were in good condition, and complied with the terms of the contract, and the court so found; that the subsequent condition was produced by exposing them to dampness, and, after being hung in the building, to intense heat; that by this process they absorbed moisture, and the heat caused contraction, which produced these results. The only claim of moisture rested in proof of the laying of the mosaic and tasselated floor, wherein it was claimed that considerable water was used, and that during that process the doors absorbed the moisture. It appeared, however, from the testimony of the men in the building who laid the floor, that but a small quantity of water was applied

thereto—about as much as would be necessary to be applied in scrubbing a floor—and the court was of opinion, as a final conclusion, that dampness was to be inferred from the fact "that the defendant found it necessary to put steam heat on during the hot months of August and September"; that this would scarcely have been done, had not the building been damp. It did not appear how hot it was in either of these two months in that year, and the evidence of the architect who caused the steam to be turned on is that it was in September. No other cause or reason was assigned by the plaintiffs or by any one else than that the condition of the doors was produced by this dampness and by the heat applied. A record was kept, when the doors were delivered, of the quantities that came and the number of workmen then employed about the building that were engaged in putting them up; and, so far as specific proof went upon this subject, the testimony fairly establishes that the doors were put in place almost immediately after delivery. That the claimed dampness made but slight impression upon the court is apparent from its remarks near the close of the proof, which expression of opinion evidently stopped further inquiry into this subject. The court said: "I don't think there is anything in this question of dampness. The doors have been in the building long enough, if they were reasonably good doors, to stand it." No further proof was adduced upon this subject after this deliverance by the court. Consequently we are not able exactly to determine what considerations induced the court to take a different view, aside from the suggestion of the turning on of the steam in August, which appears not to have been done.

Aside from mere oral proof, however, stand certain physical conditions which are much more important and satisfactory in the establishment of facts than oral statements can possibly be. All of these doors cracked and checked and otherwise fell apart in a uniform manner. There was no difference in them, save in slight degree. It is an affront to common sense to conclude, upon such facts, that each door absorbed the same amount of moisture at the same time, and was subjected to the same amount of heat at the same time; and yet such must be the conclusion if we attribute the condition of these doors to the absorption of moisture and the application of heat. The fact that they all cracked alike is controlling evidence that the same infirmity practically existed in each door, and this result could only be obtained by the same kind of a defect in each. Manifestly, such condition could not be produced by the accidental absorption of moisture. Some of the doors had not even been placed where dampness could be absorbed, assuming that others might have been exposed thereto. The action of heat and moisture accidentally received or applied does not manifest itself in this uniform way. So that not only does the oral testimony in this case predominate in favor of the defendant's contention, but the physical conditions are conclusive of it. And when this is coupled with the fact that the burden of showing performance of the contract rested upon the plaintiffs, and that substantial per-

formance only was found by the court, it is clear that the plaintiffs failed to establish facts authorizing a recovery for the doors and panels.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

O'BRIEN, J. (dissenting). This is an action to foreclose a mechanic's lien. The complaint alleged that a balance of $2,971.60 was due the plaintiffs under a contract for furnishing the interior woodwork of defendant's house. The answer denied performance upon the part of the plaintiffs, allege that the contract was procured by fraud, and set up five counterclaims. At the trial the defense of fraud was apparently abandoned, two of the counterclaims were admitted by the plaintiffs, and the third was allowed by the court for the full amount claimed. Judgment was rendered in favor of the plaintiffs for $1,718.50 together with interest; that being the amount demanded in the complaint, less the three counterclaims established. From that judgment the defendant appeals, and the only questions to be determined by us relate, as conceded in appellant's brief, to the decision of the court in refusing to allow the defendant one of the remaining counterclaims, which is designated as the third.

The allegations of the complaint are that the "plaintiffs fully complied with all the terms and conditions of said contract on their part, and have fully furnished and delivered all the materials thereunder required to be by them furnished and delivered," and that the "defendant ratified any departure from the contract of these plaintiffs that occurred, if any, and waived any claim that existed or might exist by reason of variances between the specifications and plans and contract and the materials furnished by plaintiffs." The contract provided that all the lumber to be used should "be thoroughly kiln-dried according to drawings and specifications made by" the architect, and that the work should be done "in a first-class manner." The allegations of the answer in setting up the third counterclaim are to the effect that the woodwork furnished by the plaintiffs was not properly kiln-dried, and that the "work of drying, preparing, gluing, and putting together said woodwork was not done in a first-class manner, as in and by said contract agreed, but, on the contrary, said work was done in such a negligent, careless, and unworkmanlike manner that, after said woodwork had been delivered and placed in the building named in said contract, the wood in the doors furnished under said contract separated, cracked, and warped, and the rails of said doors separated from the stiles, so that said doors failed to retain their proper position in such building, and have thereby become and are worthless and not at all fit for the purpose for which they were designed." It is further alleged that upon discovering such defects the defendant notified the plaintiffs that the doors were not according to contract, and demanded that they should be

replaced with new doors; that the plaintiffs had failed to remedy the defects; and that defendant would be obliged to replace said doors at his own expense, which was estimated at over $8,000, and this amount he sought to counterclaim. It will be observed that by these allegations the defendant merely denies that the plaintiffs performed their part of the contract in relation to the doors which they had furnished.

Upon the trial it was established that over 500 doors were supplied by the plaintiffs under their contract. Each of these doors had four panels; the lower two being of solid birch; the upper two made of five layers of wood; the interior core, of pine, about $3/8$ of an inch thick, with the grain running crosswise. To each side of this was affixed a layer of whitewood about $1/8$ of an inch thick, with the grain running from the top to the bottom of the panel; and on the outside of these layers was a birch veneer from $1/32$ to $1/16$ of an inch thick, with the grain running from top to bottom. No evidence was introduced tending to show that the general plan of construction as above described was not in conformity with the requirements of the drawings and plans of the architect, and, as these plans are not before us, we must assume that the learned trial judge is correct in finding, as he did, that in adopting this plan of construction the plaintiffs conformed to the contract. The doors were apparently all right when they were received from the plaintiffs, and when they were subsequently hung by the defendant in the building; but after they had been in place for some months the upper panels began to check and crack, and the frames to shrink. These defects continued to increase in size and number, until finally the condition of the doors became so bad that, as defendant contends, they were practically unfit for use.

The defective condition of the doors was admitted, the disputed question upon the trial being as to the cause of it. The plaintiffs contended that the imperfections, which did not appear until some months after the doors had been placed in the building, were not caused by any defect in material or workmanship, but resulted from the negligence of the defendant in subjecting the doors after they came into his possession to alternate dampness and great heat, causing the wood to swell and then suddenly contract, thus cracking and checking the veneer. The defendant, on the other hand, contended that the cracking was caused by the failure of the plaintiffs to use wood that had been properly kiln-dried, and by improper workmanship in fastening the different layers of wood together.

Evidence was offered by each party which tended to support their respective claims. From the testimony of plaintiff's witnesses it appeared that after the doors had been delivered to the defendant they were left by him for a time in a portion of the building which was damp, on account of mosaic tilework and plastering being done there, and after they had been exposed to this dampness they were hung in their respective places, and then subjected to extreme heat when the steam was turned on in the building to dry it out. Witnesses qualified as experts were called by the plaintiffs,

who testified that, in their opinion, the defects in the doors were caused by their being thus subjected alternately to moisture and to heat; and the plaintiffs' superintendent, under whose supervision the work under this contract was performed, testified that it was "a first-class job," and that the wood used was thoroughly kiln-dried.

The experts called by the defendant had, as we might expect, a different opinion as to the cause of the defects. They testified that the interior layers of wood in the panels had been improperly kiln-dried; that the method adopted by the plaintiffs of glueing and pressing together at one time all five layers of wood was not first-class workmanship, but that the proper way of manufacturing doors of this kind was to glue and press the three interior layers first, and permit them to thoroughly dry out before glueing on the two outside layers of veneer; also that it was not first-class workmanship to have the grain of the outside veneer run in the same direction as that of the wood immediately beneath. They testified that, in their opinion, the cracks and checks were caused by the improperly dried wood used, and by the improper workmanship, as above mentioned. This conflicting testimony presented a question of fact for the trial court to determine, and he states the situation in his opinion as follows:

"The evidence is clear that the doors appeared to be all right when delivered, and there is positive, affirmative evidence that they had been carefully constructed, in strict conformity with the requirements of the contract. The theory that the panels split and shrunk because the wood had not been properly kiln-dried has no positive evidence to support it, and rests wholly upon conjecture and the attempted reasoning of experts from effect to cause. The result of their evidence is that the defects which first disclosed themselves in December, about four months after the doors were delivered, might and probably would have resulted from a lack of proper kiln-drying before manufacture. But it also appeared that the same defects might be found if the doors had been properly constructed in the first place, and after delivery subjected to alternate dampness and great heat. There was some evidence to show that they had been so subjected. The defendant undoubtedly sought to show that there was no considerable dampness in the building at the time of and after the delivery, but it is significant that the defendant found it necessary to put steam heat on during the hot months of August and September, which he would scarcely have done unless the interior of the building had been pretty damp."

We think this correctly summarizes the situation at the close of the case, and the conclusion reached by the court, that the evidence showed a substantial performance by the plaintiffs, cannot be disturbed by us unless it can be seen that in reaching that conclusion the court found against the weight of evidence, or proceeded upon an erroneous theory as to the burden of proof. As already pointed out, the plaintiffs based their right to recover upon the theory that they had either wholly or substantially performed their part of the contract. The evidence shows that there was not a full performance. This is not claimed by the plaintiffs upon the present appeal, and the court has based its decision not upon a full, but upon a substantial, performance. As said in the case of Spence v. Ham, 163 N. Y. 220–223, 57 N. E. 412, 413, 51 L. R. A. 238:

"Substantial performance is performance except as to unsubstantial omissions, with compensation therefor. When the omission is slight and unintentional, in order to prevent the hardship of a failure to recover even for that which was well done, compensation is substituted pro tanto for performance. This is the modern rule, adopted upon the theory that the parties are presumed to have impliedly agreed to do what was reasonable, under all the circumstances, with reference to the subject of performance."

But the burden of showing that the omissions, if any there be, were immaterial, rests upon the plaintiff. Not only must he establish this before he can recover, but, according to the case last cited, he must also show the amount which it would cost to make the omissions good, so that such sum can be deducted from the contract price, and a recovery had for the balance only.

In the present case, therefore, before the plaintiffs' cause of action was established, it was necessary for them to show at least that the wood used in the doors was properly kiln-dried, as required by the contract, and that the work was done in a first-class manner. The burden of proving these things rested upon them, and it seems to us that a fair reading of the judge's findings shows that he required the plaintiffs to bear this burden. These findings, in so far as they relate to this subject, are as follows:

"(5) That plaintiffs substantially performed their said contract, and that the defects in the materials furnished were inadvertent and not willful on the part of the plaintiffs."

"(14) That the doors furnished by plaintiffs were according to contract when delivered, and were carefully constructed in conformity to the requirements of the contract, and that the defendant failed to show that there was any latent defect in the doors when delivered.

"(15) That the weight of evidence in this action sustains the contentions of the plaintiffs as to the matters of fact hereinbefore found in their favor."

The appellant contends that from the last clause of the fourteenth finding above quoted, to wit, "That the defendant failed to show that there was any latent defect in the doors when delivered," it appears that the court placed upon the defendant, instead of upon the plaintiffs, the burden of proving that improper materials were used, and that the work was not first-class. We do not think that, taking the finding as a whole, it is susceptible of such interpretation. The finding is that the doors were carefully constructed in conformity to the requirements of the contract; that is, that the wood was properly kiln-dried, and the work was first-class. The succeeding finding is that the weight of evidence sustains the contention of the plaintiffs as to that and other questions of fact. This, we think, clearly shows that the court regarded it as essential that the plaintiffs should sustain the burden of proving a compliance with the contract in the particulars mentioned, and that he found that they had sustained that burden. For us to determine otherwise, we would have to take the particular clause criticised away from its context, and, by reading it alone, give to it a meaning in conflict with the findings as a whole. As already said, we think the findings show that the court proceeded upon a proper theory as to the burden of proof, by placing that burden upon the plaintiffs, and that his judgment as rendered is not against the weight of evidence.

I do not agree, therefore, with the views expressed by the majority of the court; thinking, as I do, that the judgment should be affirmed, with costs.

LAUGHLIN, J., concurs.